**UNITED STATES of America ex rel.
John SUGGS, Petitioner,**

**v.**

**J. Edwin LA VALLEE, Superintendent, Clinton State Correctional Facility, Dannemora, New York, Respondent.**

**No. 72 Civ. 4336.**

United States District Court,
S. D. New York.

Feb. 25, 1975.

Judson A. Parsons, Jr., New York, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., for respondent; by Stanley L. Kantor, Deputy Asst. Atty. Gen., of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

The petitioner, a state prisoner presently incarcerated in the Auburn Correctional Facility, makes application pursuant to Title 28, United States Code, Sec·

tion 2254, for a writ of habeas corpus in order to secure a new trial, or, in the alternative, an evidentiary hearing, relating to the involuntary nature of his plea of guilty to the crimes of rape in the first degree and robbery in the first degree, in Supreme Court, New York County, for which he was sentenced on June 6, 1969, to two concurrent indeterminate terms of five to fifteen years imprisonment.

I find that petitioner has complied with the requirement of 28 U.S.C. § 2254(b) that he first exhaust state court remedies before presenting his claims to the federal courts. .

His initial appeal, limited to the issue of his right to a competency hearing at the time of sentencing, was denied by the Appellate Division, People v. Suggs, 35 A.D.2d 781, 314 N.Y.S.2d 981 (1st Dept. 1970), with leave to appeal to the New York Court of Appeals denied on November 6, 1970.

He also filed an application for a writ of error *coram nobis* in Supreme Court, New York County, again raising the issue of his right to a competency hearing at the time of sentencing. This petition was denied in August 1970, and no appeal was taken therefrom.

Shortly after the institution of this habeas petition, counsel was assigned by this Court and the Court suspended consideration on the merits until such time as petitioner returned to the state courts to exhaust on the issue of the sentencing court's failure to afford the colloquy on voluntariness mandated by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Accordingly, petitioner filed a motion to vacate the judgment in Supreme Court, New York County, which was denied on December 6, 1973, with leave to appeal to the Appellate Division denied on March 5, 1974.

■ Thus, there has now been a proper exhaustion of state court remedies, 28 U.S.C. § 2254(b); both procedurally, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Brown

v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); and as to the specific subject matter raised in the petition, Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); United States ex rel. Nelson v. Zelker, 465 F.2d 1121 (2d Cir.), cert. denied, 409 U.S. 1045, 93 S.Ct. 544, 34 L. Ed.2d 497 (1972).

The basic question presented is whether petitioner was deprived of due process of law by virtue of the sentencing court's failure to inquire into the voluntariness of his original guilty plea, in light of his having been found incompetent immediately after his initial plea.

Petitioner was originally charged in an eighteen-count indictment with various counts of rape in the first degree, sodomy in the first degree, robbery in the first degree, and possession of a weapon. A second indictment charged him with additional counts of robbery.

In spite of his relative youth (age 17) and lack of a prior criminal record, he was denied Youthful Offender Status on August 1, 1969, and appeared in Supreme Court, New York County, on September 13, 1968, in order to plead to the indictment. Petitioner, represented by the Legal Aid Society, withdrew his prior plea of not guilty and offered to plead guilty to one count of rape, first degree, and one count of robbery, first degree, in full satisfaction of the indictments. The prosecution recommended acceptance of the proffered plea.

Before accepting the plea, the court entered into a colloquy with petitioner as to his understanding of the plea, and as to whether or not there was a factual basis for the plea. During the course of this colloquy, petitioner responded affirmatively when asked whether he had heard the facts of the crimes as related by the District Attorney and he admitted them. He also stated that he had consulted with his attorney. The court at that time asked him whether his guilty plea was voluntary and whether threats or promises were made to induce him to plead. He responded appropriately.

It is to be noted, however, that the court on that occasion made no inquiry whatsoever into whether petitioner understood what specific constitutional rights he would be waiving by pleading guilty. Moreover, there is no indication whatever on the face of the plea minutes that petitioner was ever informed of the potential maximum sentence which might be imposed upon his guilty plea, or of the possibility that he would have to serve a minimum sentence before being eligible for parole. However, in light of this Court's disposition, *infra*, it is unnecessary to rule upon whether petitioner fully understood the consequences of the plea at that time.

Upon satisfying itself as to the plea's voluntariness, the court thereupon began to inquire into whether petitioner felt any remorse for his acts. After engaging in a bizarre colloquy, reproduced in the Appendix, *infra*, the court *sua sponte*, with the consent of petitioner's counsel, ordered him to Bellevue Psychiatric Hospital for a psychiatric examination and report, pursuant to Sec. 658, et seq., of the then-Code of Criminal Procedure (now Article 730, Criminal Procedure Law).

However, the court still accepted petitioner's guilty plea and set October 31, 1968, for sentencing.

Petitioner was committed forthwith to Bellevue and a report to the court was completed on October 21, 1968. The report revealed that petitioner had a long history of behavior problems, including residence at Wiltwyck Treatment Center and Hampton State Training School, and that "His history of behavior reveals that he has characteristically reacted to feelings of persecution by retaliation." Diagnosing petitioner as suffering from "Schizophrenia, Paranoid Type", the two qualified psychiatrists who examined him found him to be "in such a state of insanity as to be incapable of understanding the charge, proceedings or making his defense." *Cf.*, Sec. 658, C. C.P.

Pursuant to Sec. 662–b, C.C.P., the court, after a hearing, found petitioner incompetent to stand trial and committed him to the custody of the Commissioner of Mental Hygiene on November 6, 1968. On November 15, 1968, petitioner was committed to Matteawan State Hospital.

On April 4, 1969, the Superintendent of Matteawan filed a report with the court, certifying that petitioner was "no longer in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or making his defense thereto." The Superintendent's report, containing a history of petitioner's psychiatric background and progress, diagnosed his condition as Psychosis with Antisocial Personality, Paranoid and Reactive Features. The report stated that at a recent staff presentation, petitioner was attentive and cooperative and was able to give a coherent and relevant account of the events leading to his arrest.

Upon the basis of that report alone petitioner was certified as competent on April 9, 1969, and he was thereupon returned to court for sentencing.

On June 6, 1969, petitioner appeared with newly appointed counsel for sentencing. Upon being asked by the court whether there was any legal cause why judgment should not be pronounced at that time, petitioner replied that at the time of his original plea, he wasn't capable of understanding the case.

The court then reiterated to petitioner that it had previously adjourned the sentencing in order to give petitioner's counsel an opportunity to make any applications he deemed advisable with regard to withdrawing his plea. The court reminded petitioner that his attorney had informed the court earlier that week that petitioner did not wish to withdraw his plea. The court then inquired of defendant personally, whether he wished to withdraw his plea or proceed with sentencing. Petitioner asked to be sentenced and indicated that he specifically did not wish to withdraw his plea. Thereupon, making no further inquiry into the voluntariness or factual

basis for the plea, the court sentenced petitioner to a term of five to fifteen years.

Petitioner argues that under the circumstances of the present case, the fact that his initial guilty plea was entered at a time when he was incompetent voids the actual plea and all proceedings relating thereto under the rule of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and that, furthermore, the actual sentencing was improper because no inquiry was made as to whether petitioner's previous void plea (or his decision not to move to withdraw it) was voluntary, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), decided just four days before sentence was imposed.

Such an argument is indeed substantial, and under the exigent circumstances of this case, I am constrained to sustain these contentions. Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966).

■■ It is clear that the conviction of a defendant while he is legally incompetent violates due process. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103, 1975; Pate v. Robinson, *supra*; Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Similarly, it is equally clear that in order for a guilty plea to be valid, such a plea must be knowing and voluntary. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L. Ed. 1009 (1927); McCarthy v. United States, *supra;* United States ex rel. Leeson v. Damon, 496 F.2d 718, 721 (2d Cir. 1974).

■ The appropriate standard with regard to a guilty plea is that:

" . . . [I]t must be an 'intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Conse-

quently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." McCarthy v. United States, *supra*, 394 U.S. at 466, 89 S.Ct. at 1171.

■ The application of such a standard to the plea of a defendant who is declared incompetent immediately after having been remanded for psychiatric examination upon the basis of his colloquy with the court at the time of the plea manifestly negates the validity of any such plea. As the Supreme Court stated in an analogous situation:

". . . [I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." Pate v. Robinson, *supra*, 383 U.S. at 384, 86 S.Ct. at 841.

Respondent's sole answer to this argument is to attempt to persuade the court that no proof has been adduced that petitioner actually was incompetent at the time of his initial plea, and that, given the time delay between the date of the plea and the psychiatric report—five weeks—there is no clear-cut evidence that petitioner was actually incompetent on the day of the plea.

Such an argument is transparent sophistry. Petitioner was remanded for examination because of his bizarre responses at the plea itself. Moreover, the record reveals that he was sent to Bellevue on the very date of the plea. The date of the psychiatric report to the court is merely the date upon which the psychiatrists reported their findings, not the date of their examinations.

Such a psychiatric report, and its subsequent ratification by the court, attesting to a defendant's incompetency, must be interpreted as conclusively invalidating any plea that constitutes a voluntary relinquishment of rights made at a time when a defendant is suffering under such a disability. United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953); United States

ex rel. Kaye v. Zelker, 355 F.Supp. 1002 (S.D.N.Y.1972), aff'd, 474 F.2d 1336 (2d Cir. 1973).

■ Thus, as any plea that is taken by a defendant at a time when he is incompetent must be treated as a nullity, as is conceded in this case by the respondent, the Court must next consider whether the sentencing court's attempted ratification of the previous guilty plea sufficiently delved into the question of the ratification's voluntariness to meet the standards imposed by Boykin v. Alabama, *supra*.

The Supreme Court in *Boykin* specifically enumerated that among the rights waived by a defendant who pleads guilty are the constitutional rights to a jury trial, confrontation by his accusors, and the privilege against self-incrimination. 395 U.S. at 243, 89 S.Ct. 1709. The Court stated that waiver cannot be presumed from a silent record, holding that the prerequisites of a valid waiver must appear on the record:

> "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."

*Id.*, at 242, 89 S.Ct. at 1711.

The question of how explicitly a defendant must be shown to have waived these rights is, however, not susceptible of clear-cut definition. While several circuits have held that the record need not reflect that the waiver of the three constitutional rights enumerated in *Boykin* need be explicit, Wade v. Coiner, 468 F.2d 1059 (4th Cir. 1972); Winters v. Cook, 489 F.2d 174 (5th Cir. 1973) (en banc); Todd v. Lockhart, 490 F.2d 626 (8th Cir. 1974); other circuits have held that there must be an affirmative showing of explicit waiver, Coleman v. Burnett, 155 U.S.App.D.C. 302, 477 F.2d 1187 (1973); Sieling v. Eyman, 478 F. 2d 211 (9th Cir. 1973); Moore v. Anderson, 474 F.2d 1118 (10th Cir. 1973). While this Circuit has not yet specifically ruled on the question, it has seem-ingly indicated sympathy with the latter interpretation in United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1102 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973), wherein the Court stated in dictum that the states would appear to have imposed upon them by *Boykin* \* the requirements of demonstrating voluntariness consonant with Rule 11, F.R.Cr.P. However, the Court declined to so rule on that occasion on the ground that the guilty plea in question predated *Boykin*, and the Circuit had previously held it to be non-retroactive. United States ex rel. Rogers v. Adams, 435 F.2d 1372, (2d Cir. 1970), cert. denied, 404 U.S. 834, 92 S.Ct. 115, 30 L.Ed.2d 64 (1971).

■ The facts of the instant case throw the question of non-retroactivity of *Boykin* into sharp relief, for, while the initial plea occurred some nine months before that decision, the sentencing took place four days *afterward*. Thus, given the previous incompetency of petitioner, rendering his guilty plea a nullity, this Court must apply *Boykin* standards in determining whether the purported ratification at sentencing of the earlier plea sufficiently rehabilitated it in order for it to remain valid.

■ Inspection of the sentencing minutes reveals a complete absence of any meaningful inquiry into the voluntariness of petitioner's earlier plea. The sentencing court's sole inquiry was directed to the question of whether petitioner wished to withdraw his earlier plea. Upon the defendant's acquiescence in the earlier plea, the court proceeded without any further inquiry of its own into the original plea's voluntariness or the voluntariness of a now-competent defendant's ratification of a plea made when he was incompetent. No inquiry whatever was made of petitioner at any time during which he was competent as to whether any promises had been made to him, whether he had been coerced, whether he was acting under his own

---

\* *Cf.*, United States ex rel. Hill v. Ternullo, 510 F.2d 844, at 845 n. 1 (2d Cir. 1975).

free will either with respect to his invalid plea or his decision not to withdraw it.

Moreover, no inquiry was made of the defendant, now that he was competent, as to whether there was a proper factual basis for his plea. United States ex rel. Dunn. v. Cascles, 494 F.2d 397 (2d Cir. 1974); McCarthy v. United States, *supra*.

■ Respondent argues that petitioner's waiver of the opportunity to make a motion to withdraw his plea at the time of sentencing operates as both a ratification of the earlier plea and a waiver of his objections to that plea's voluntariness, citing United States ex rel. Callahan v. Follette, 418 F.2d 903 (2d Cir. 1969), cert. denied, 400 U.S. 840, 91 S. Ct. 80, 27 L.Ed.2d 74 (1970).

Such an argument is plainly untenable upon the facts of this case. *Callahan* concerned a guilty plea, valid on its face, that was being attacked upon the grounds of unfulfilled promises by either the court or the prosecution, a situation in which the defendant clearly has the burden of proof. Callahan was held to have waived any objection to his plea by his failure to take the opportunity afforded by the court for a formal motion and determination of his request for withdrawal.

■ Furthermore, respondent's suggestion that the 1968 plea minutes in this case be read in conjunction with the 1969 sentencing minutes clearly flies in the face of both Pate v. Robinson, *supra*, and McCarthy v. United States, *supra*.

■ It is manifest that where a defendant has been remanded for a competency examination immediately after pleading guilty, and is subsequently found incompetent to stand trial, such a plea must be considered null and void, and upon the attainment of competency, he must be given an opportunity to replead to the charges.

■ Furthermore, should the trial court, alternatively, wish to provide a newly-competent defendant an opportunity to ratify his earlier plea, a full and complete inquiry must be made by the court on that later occasion to determine the voluntariness of that ratification, the voluntariness of the plea itself, and further inquiry must once again be made of the now-competent defendant as to whether there is a proper factual basis for the plea.

Applying these principles to the instant facts, it is manifest that no such inquiry as to the voluntariness of the ratification, the plea itself, or any factual inquiry was made of the defendant at the time of sentencing. Thus, if the 1968 plea is deemed a nullity by virtue of defendant's incompetence, the court must look to the sentencing minutes, which are utterly inadequate to make any finding of waiver of rights, pursuant to *Boykin*.

In attempting to fashion the appropriate remedy in this case, the Court is not unmindful of the fact that in most cases a hearing may be held by the District Court in an attempt to cure the defects of the plea. U. S. ex rel. Leeson v. Damon, *supra;* Green v. Wingo, 454 F. 2d 52, 54 (6th Cir. 1972).

■ However, a hearing is not always mandated, and there is authority for the Court to hold that an inadequate record alone may justify relief from a guilty plea, Stinson v. Turner, 473 F.2d 913 (10th Cir. 1973); Perry v. Crouse, 429 F.2d 1083 (10th Cir. 1970). This would appear to be the wiser course in this case, dealing as we are with a void guilty plea and a grossly inadequate post-*Boykin* attempted ratification of that plea. The holding of a hearing in this case in order to flesh out a virtually non-existent record would be an exercise in futility. Rather, petitioner should be given the opportunity, albeit belated, to properly replead to the indictments in question.

In light of the foregoing disposition, it is unnecessary for me to decide whether, under any and all circumstances, the failure of a sentencing court to hold a competency hearing, *sua*

*sponte,* where none has been requested, and where the record at the time of sentencing did not indicate that the petitioner was manifesting any psychiatric symptomotology, violated due process.

Suffice it to say, Pate v. Robinson, *supra,* does not mandate a competency hearing regardless of the evidence and whether or not the defendant requests one. United States ex rel. Evans v. LaVallee, 446 F.2d 782 (2d Cir. 1971); United States ex rel. Roth v. Zelker, 455 F.2d 1105 (2d Cir.), cert. denied, 408 U. S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340, United States ex rel. Curtis v. Zelker, *supra.*

■ Upon careful scrutiny of this record as well as petitioner's failure to particularize in what way he was prejudiced by this omission, the sentencing court's refusal to hold a competency hearing, *sua sponte* was well within the proper exercise of its discretion.

Accordingly, petitioner's plea of guilty is vacated and the writ of habeas corpus shall issue sixty days from the date of this opinion, unless within that time petitioner is allowed to re-plead in the State court upon the indictments in question.

The Court wishes to express its appreciation to Judson A. Parson, Jr., Esq., assigned counsel, for his assistance in this case.

### APPENDIX

The Court: You are not sorry at all that you did any of these things, Mr. Suggs?

The Defendant: Nothing to be sorry about.

The Court: What?

The Defendant: There is nothing to be sorry about.

The Court: Nothing to be sorry about? Well, what in your opinion would be something to be sorry about? If you did what? If what happened?

The Defendant: If I did something and I did it there is nothing to be sorry about after I do it.

The Court: No matter what you do?

The Defendant: No matter what I do. (Plea minutes, pp. 17–18).

The Court: Well, don't you think it might help you if you show that you are sorry, you show compassion for your victims?

The Defendant: I tried that once.

The Court: What?

The Defendant: I tried that once.

The Court: You tried that once? When was that?

The Defendant: When I was small.

The Court: What happened when you were small?

The Defendant: I lost a finger because I tried.

The Court: You lost a finger you say?

The Defendant: Part of it.

The Court: What happened then?

The Defendant: That's when I did something when I had a fight with my sister. I wanted to show my mother I was sorry. Instead of showing her I was sorry, she cut me.

The Court: Who tried to cut you, your mother or your sister?

The Defendant: My mother. (*Id.* at pp. 19–20).

The Court: We are going to have the doctors look at you, Mr. Suggs. They may be able to help you in some way because there is something wrong with you, apparently. You seem to be—whom are you mad at?

The Defendant: No one. (*Id.* at p. 21).