**UNITED STATES of America ex rel. John SUGGS, Petitioner-Appellee,**

v.

**J. Edwin LA VALLEE, Respondent-Appellant.**

**No. 1042, Docket 75–2049.**

United States Court of Appeals, Second Circuit.

Argued May 7, 1975.

Decided Aug. 7, 1975.

David R. Spiegel, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellant.

Judson A. Parsons, Jr., New York City (Robert J. Costello, New York City, on the brief), for petitioner-appellee.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

TIMBERS, Circuit Judge:

The State of New York appeals from an order entered February 25, 1975 in the Southern District of New York, Kevin T. Duffy, *District Judge,* 390 F.Supp. 383, on a state prisoner's petition for a writ of habeas corpus, vacating his pleas of guilty and directing that the writ issue in sixty days unless the prisoner is permitted to replead in the state court within that time.

With the benefit of the hindsight that the district court did not have, we vacate its order and we remand the case for an evidentiary hearing—by either the state court or the district court, as the latter may determine—on the prisoner's competence at the time his guilty pleas were entered, in the light of two psychiatric reports which were not before the district court at the time the order now before us was entered.

In two indictments filed July 30, 1968, John Suggs was charged with various counts of rape, sodomy, robbery and possession of a weapon. The charges arose from two separate incidents of violence which took place in New York City on April 28 and May 24, 1968. He pleaded not guilty to all charges on August 1, 1968.

On September 13, 1968, when he was 17 years of age and while represented by The Legal Aid Society, Suggs appeared before Justice Nunez in the New York County Supreme Court. On this date he withdrew his pleas of not guilty and pleaded guilty to one count of rape and one count of robbery in satisfaction of both indictments. Before accepting Suggs' guilty pleas, Justice Nunez conducted an extensive voir dire examination of Suggs to determine whether he understood to what he was pleading, whether there was a factual basis for the pleas, and whether the pleas were voluntary. Suggs' responses indicated that he understood the charges, that there was a factual basis for his pleas and that he was pleading voluntarily. He admitted all of the alleged facts. He also volunteered information.

During the course of the court's questioning, however, Suggs refused to admit that he felt any remorse for what he had done. *After* accepting his pleas on September 13, therefore, Justice Nunez ordered a psychiatric examination of

Suggs for sentencing purposes. For aught that the record before us discloses, neither at that time nor at any time prior to the instant appeal was anyone who had anything to do with Suggs' case aware of a psychiatric report which was furnished to the New York County Supreme Court by Dr. Emanuel Messinger under date of July 23, 1968 and which stated that Suggs was "without psychosis and of average intelligence".

Pursuant to Justice Nunez's order following his acceptance of the guilty pleas, Suggs was given a psychiatric examination. On October 21, 1968, the report of this examination was transmitted to the New York County Supreme Court by Drs. Martin I. Lubin and Laszlo Kedar. They stated that Suggs was a paranoid type schizophrenic and that he was "incapable of understanding the charge, proceedings or making his defense". Acting on this report, Justice Gold of the New York County Supreme Court entered an order on November 6, 1968 finding Suggs "incapable of understanding the charge or proceedings against him, or of making his defense thereto" and committing him to the custody of the Commissioner of Mental Hygiene.

On April 4, 1969, after drug therapy, Suggs was declared competent to stand trial. He was returned for sentencing. At the request of Suggs' newly appointed counsel, he was reexamined. On May 20, 1969, Dr. Messinger, who had written the July 23, 1968 report to the court, reported again that Suggs was not psychotic.

On June 6, 1969, Suggs appeared for sentencing before Justice Schweitzer in the New York County Supreme Court. Sentencing had been adjourned once to allow Suggs to withdraw his pleas of guilty. Two days before the hearing which was scheduled for that purpose, Suggs' counsel informed the court that Suggs wished to abandon his application to withdraw his pleas and would accept sentence. At the sentencing proceedings, however, Suggs again indicated that he wanted to withdraw his pleas.

But when the court gave him an explicit opportunity to make such an application, he declined to do so. Suggs thereupon was sentenced to a term of imprisonment of five to fifteen years.

He appealed to the Appellate Division on the issue of his right to a competency hearing at the time of sentencing even though he had not requested one. His conviction was affirmed without opinion on October 13, 1970. *People v. Suggs,* 35 App.Div.2d 781, 314 N.Y.S.2d 981 (1st Dept. 1970). On November 6, 1970, leave to appeal to the New York Court of Appeals was denied.

In the meanwhile, Suggs also had filed an application in the New York County Supreme Court for a writ of error *coram nobis,* in which he again raised the issue of his right to a competency hearing at the time of sentencing. This petition was denied on August 18, 1970. No appeal was taken.

On October 13, 1972, acting pro se, Suggs filed the instant petition for a writ of habeas corpus in the Southern District of New York. He claimed, under *Pate v. Robinson,* 383 U.S. 375 (1966) (decided prior to his 1969 sentencing), that the state court should have ordered a hearing *sua sponte* on his competency to reaffirm his pleas of guilty. The district court appointed counsel to represent him.

On July 19, 1973, the petition for a writ of habeas corpus by stipulation was placed on the suspense calendar to allow Suggs to return to the state courts to raise the new issue of the sentencing court's alleged failure to conduct the inquiry on voluntariness claimed to be required by *Boykin v. Alabama,* 395 U.S. 238 (1969). *Boykin* was decided on June 2, 1969, four days before Suggs was sentenced in the instant case.

On December 6, 1973, Justice Sandifer, in the New York County Supreme Court, filed an opinion which denied Suggs' motion to vacate his judgment of conviction based on his *Boykin* claim and which stated:

"The thrust of defendant's argument is that at this point in the face

of the defendant's categorical refusal to withdraw his plea in open court in the presence of counsel, that the court, sua sponte, should have set his plea aside for the sole purpose of inquiring of him whether his pleas were 'intelligent and voluntary' (*Boykin v. Alabama, supra*) despite the fact that at the time his original pleas were taken (September 13, 1968), it is far from clear that the defendant was incompetent.

It will suffice to say that we do not read *Boykin* so as to require this procedure in this case . . . . Applying [the *Boykin*] standard to this case we find that the evidence is overwhelming that the defendant by his guilty pleas knowingly, intelligently and voluntarily waived his constitutional right against self-incrimination under the Fifth Amendment, his right to trial by jury . . . , and his right to confront his accusers . . . , and that this motion is in all respects denied." (citations omitted).

On March 5, 1974, leave to appeal to the Appellate Division from Justice Sandifer's order was denied.

Following removal of the case from the suspense calendar in the district court, Judge Duffy filed an opinion on February 25, 1975 granting the relief stated above. The court's order vacating Suggs' pleas of guilty was based on the report by Drs. Lubin and Kedar dated October 21, 1968 which stated that Suggs was psychotic. The court concluded without an evidentiary hearing that the only possible inference was that Suggs was incompetent at the time of his pleas and that his pleas therefore were invalid under *Pate v. Robinson, su-*

pra, and *McCarthy v. United States,* 394 U.S. 459 (1969). 390 F.Supp. at 387.[1]

At the time of its decision, the district court did not have before it the two reports of psychiatric examinations of Suggs by Dr. Messinger dated July 23, 1968 and May 20, 1969, each of which stated that Suggs was not psychotic. These were not discovered by the State until April 1, 1975 when it searched the dead records file of the Psychiatric Clinic of the Supreme Court. This was after the State had filed its notice of the instant appeal. On April 15, 1975, we ordered that argument of the appeal be expedited and granted the State's motion to amend the record by including the two Messinger reports.

We believe that the report dated July 23, 1968 may well be of critical importance to the determination of Suggs' competence at the time of his pleas. In reporting that Suggs was not psychotic, it flatly contradicts the Lubin-Kedar report of October 21, 1968, made three months later. The two reports raise an issue of fact as to Suggs' competence when he pleaded guilty on September 13, 1968. If the district court had had the July 23, 1968 report, it undoubtedly would have held an evidentiary hearing on Suggs' petition before ruling on it.

In view of the fact that Suggs' petition has been pending in the district court since October 13, 1972 and the case already has had one trip to the state courts to allow Suggs to exhaust his state remedies, we think it is most unfortunate that Dr. Messinger's report was not located until April 1, 1975. But in view of the importance of this report to the factual issue involved, the only appropriate course open to us is to re-

1. Once the district court had concluded that Suggs' guilty pleas were invalid, it then considered whether the court which sentenced Suggs on June 6, 1969 had inquired sufficiently into the voluntariness of his pleas to fulfill the requirements of *Boykin v. Alabama, supra,* i. e. the claim which Justice Sandifer had rejected. It held that the minutes of the sentencing proceedings were "utterly inadequate to make any finding of waiver of rights, pursuant to *Boykin*". 390 F.Supp. at 389. It also rejected the State's argument that Suggs had ratified his earlier plea by refusing to withdraw it when given the opportunity to do so by the sentencing court. In view of our disposition of the case, we find it unnecessary to reach these issues.

Nor do we reach Suggs' claim that the sentencing court should have held a competency hearing *sua sponte.* This claim was rejected by the district court. 390 F.Supp. at 389–90. It has not been pressed on appeal.

mand the case for an evidentiary hearing.

One of the puzzling aspects of this case is that it is not clear from the record whether the issue of Suggs' competency *at the time of his guilty pleas* actually has been presented to the state courts. His direct appeal and *coram nobis* proceeding appear to have raised the issue of his right to a competency hearing *at the time of sentencing*. His motion to vacate judgment before Justice Sandifer raised his *Boykin* claim. We suggest that the district court give consideration to affording the state court an opportunity initially to hold the evidentiary hearing which we find is required. See *Jackson v. Denno,* 378 U.S. 368, 393–96 (1964); *Iverson v. State of North Dakota,* 480 F.2d 414, 428 (8 Cir.), *cert. denied,* 414 U.S. 1044 (1973).

We leave to the discretion of the district court, however, whether the evidentiary hearing should be held initially by the state court or the district court. We have confidence in the district court's ability to balance the competing interests here involved: on the one hand, the congressional policy of requiring exhaustion of available state remedies; and on the other, the equally important policy of not exhausting state prisoners who seek to assert their federal constitutional rights. In any event, we suggest that whichever court holds the evidentiary hearing should consider the advisability of taking testimony not only from the psychiatrists who examined Suggs but also from others who observed him during the critical period, including his lawyer at that time and the assistant district attorney who handled the case. *Iverson v. State of North Dakota, supra,* 480 F.2d at 427.

Vacated and remanded.