**UNITED STATES of America ex rel. John SUGGS, Petitioner,**

**v.**

**J. Edwin LaVALLEE, Superintendent, Clinton State Correctional Facility, Dannemora, New York, Respondent.**

**No. 72 Civ. 4336.**

United States District Court, S. D. New York.

Nov. 16, 1976.

Judson A. Parsons, Jr., New York City, for petitioner, by John E. Leo, New York City, of counsel.

Robert M. Morgenthau, Dist. Atty., New York City, for respondent, by Peter L. Zimroth, Henry J. Steinglass, Asst. Dist. Attys., New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This case is once more before this Court, after having been remanded to State court for an evidentiary hearing. The remand was ordered in light of the sudden appearance of two psychiatric reports which were produced by the State respondents only on appeal from my order vacating petitioner's guilty plea on the ground of incompetence and granting a writ of habeas corpus unless petitioner reaffirmed his plea in State court. The facts surrounding his incarceration are detailed in my opinion of February 25, 1975, 390 F.Supp. 383 (S.D.N.Y.1975) and in the opinion of the Court of Appeals, 523 F.2d 539 (2d Cir. 1975).

On September 13, 1968, petitioner Suggs pleaded guilty to one count of rape and one count of robbery before Justice Nunez of the State Supreme Court, New York County, in satisfaction of two indictments filed July 30, 1968, charging petitioner with various counts of rape, sodomy, robbery and possession of a weapon. As a result of answers given by Suggs to extensive questioning by the court, he was ordered to Bellevue Psychiatric Hospital for a psychiatric examination and report. His plea, however, was accepted and a date was set for sentencing.

A psychiatric report was completed and sent to the court by Drs. Martin I. Lubin and Laszlo Kedar on October 21, 1968, indicating that Suggs was a paranoid-type schizophrenic, who was "incapable of understanding the charge, proceedings or making his defense." Pursuant to Section 662 of the then-Code of Criminal Procedure, now contained in Article 730 of the Criminal Procedure Law, Suggs was committed to the custody of the Commissioner of Mental Hygiene on November 6, 1968, by order of Justice Gold after a hearing, and was committed to Matteawan State Hospital for the Criminally Insane on November 15, 1968. On April 9, 1969, Suggs was certified as competent and returned to the court for sentencing, which was imposed on June 6, 1969.

My decision granting habeas corpus relief was based in part on the Lubin-Kedar report of October 21, 1968, which stated that petitioner was psychotic at that time and formed the basis of an inference that he was incompetent at the time his plea was taken. This report was the only available psychiatric report in the record before me. On appeal, however, the State requested leave to expand the record (instead of requesting remand to me) to include two psychiatric reports dated July 23, 1968 and May 20, 1969 prepared by Dr. Emanuel Messinger, which stated that Suggs was not psychotic. In so finding, they flatly contradicted the reports upon which petitioner's hospitalization, and my conclusions of February 25, 1975, were primarily based. In light of these newly discovered reports, the Court of Appeals directed that an evidentiary hearing be held, leaving the forum to my discretion. 523 F.2d 539 (2d Cir. 1975). Since necessary witnesses included Justices of the State Supreme Court, I requested from the State court findings concerning knowledge of the existence of the Messinger reports as bearing on the validity of Sugg's plea. 400 F.Supp. 1366 (S.D.N.Y. 1975). The State court hearing, however, did not focus on the lack of awareness of the reports; instead, based on the evidence adduced, Judge Melia concluded that petitioner was competent at the time his plea was taken and that petitioner had ratified the plea at the time of sentencing.

Petitioner now asserts that he is entitled to a writ of habeas corpus notwithstanding this State court determination, contending that the guilty plea should be set aside since he was incompetent at the time the plea was entered, and, in any event, the failure to supply his defense counsel with the Mes-

singer report of July 23, 1968 violated his right to due process. Alternatively, he seeks a full evidentiary hearing in this Court. The State respondent has cross-moved to dismiss the proceedings for failure to exhaust State remedies.

The State's contention that petitioner's present relief lies in a direct appeal of Judge Melia's finding in the State appellate system is meaningless at this stage of the proceedings. The issue of petitioner's competency at the time of plea has already been argued before a State appellate court in a *coram nobis* petition which was denied in 1973.* The Messinger report of July 23, 1968, which is part and parcel of that issue, was produced some seven years after the plea was taken, after this Court had ruled once on petitioner's case and an appeal was pending from that ruling, and after petitioner had been forced to return for a further series of State proceedings, including the above mentioned appeal. To seek to require a further appeal with its consequent delay is an intolerable request which flies in the face of the "important policy of not exhausting state prisoners who seek to assert their federal constitutional rights." *United States ex rel. Suggs v. LaVallee*, 523 F.2d 539, 543 (2d Cir. 1975). Indeed, petitioner, at this stage has done everything possible and appropriate.

In any event, it is clear from the record that I referred the hearing to State court not out of exhaustion considerations, but rather out of respect for the convenience of the Justices in the State system, whose testimony was essential. 400 F.Supp. 1366, 1367 (S.D.N.Y.1975). It was well within my discretion to ignore this accommodation and hold the hearing myself. The fact that I might disagree with the result obtained at the hearing does not reduce my respect for the State judiciary. The making of this motion, unfortunately, causes me to comment on the possible absence of what I feel to be appropriate respect for both this

Court and the State judiciary on the part of the State respondent or his counsel.

Petitioner's motion to summarily set aside his guilty plea is also denied. The question of petitioner's competence at the time of his plea on the record as it now stands presents a question of fact which is incapable of summary resolution. The Messinger report of July 23, 1968 indicated that Suggs was free of psychosis; it did not deal with the issue of his competence. Notwithstanding this fact, petitioner argues that it raised substantial questions regarding his mental ability and stability, and had it been available to his defense counsel, a complete pre-plea examination establishing his incompetence would have been requested. Petitioner urges that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) applies to this situation, and that the suppression of evidence favorable to Suggs was a violation of due process. This contention is somewhat tenuous. It cannot be said that the Messinger report was so favorable to Sugg's position as to be tantamount to an exculpatory statement; indeed, the Court of Appeals, in vacating my order and remanding the case for a hearing in light of the production of this report, implied that, at least in its view, the report represented some indicia of competence. *See* 523 F.2d 539, 542 (2d Cir. 1975). Additionally, despite the inexcusable failure of the State to produce this report at an earlier time, it is questionable whether the report was suppressed within the meaning of *Brady*.

Petitioner is, however, entitled to a federal hearing on the issues presented. I remanded the case to State court for the mere taking of testimony to determine whether those involved with the case had knowledge of the Messinger reports. Judge Melia's finding of Suggs' competency at the time the plea was taken and subsequent ratification of the plea at the time of sentencing went far beyond this narrow matter re-

---

* Although the Court of Appeals noted that it was unclear whether the issue of petitioner's competency at the time of his guilty plea had ever been presented to the State courts, 523 F.2d 539, 543 (2d Cir. 1975), it is clear that the question was raised in petitioner's second *coram nobis* petition which was omitted from the appellate record. (Ex. G to Affidavit in Support of Petitioner's Motion).

ferred for resolution. Indeed, the issue concerning ratification of the plea at sentencing had previously been disposed of by my opinion of February 25, 1975, in which I determined that no valid ratification had occurred and that the inquiry into the voluntariness of the plea was insufficient under the standards of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Moreover, certain of the assumptions upon which Judge Melia's determination was based contradict the record. Although Judge Melia suggests that the examination ordered by Justice Nunez following acceptance of the plea was for sentencing purposes only, the stipulation relating to Justice Nunez's testimony states in no uncertain terms that such examination was not just for the purpose of sentencing, but "for all purposes, including a determination of whether the defendant was competent to be tried." Judge Melia also asserts that the "bizarre behavior at the time of plea" to which my February 25 opinion referred "apparently relates to defendant's assertion that he was not sorry for what he had done." Yet even a cursory glance at the plea minutes indicates that it was the reason given by Suggs as to why he was not sorry, and not the lack of remorse itself, which was unusual. This is evidenced by the following excerpt from those minutes:

> The Court: Well, don't you think it might help you if you show that you are sorry, you show compassion for your victims?
>
> The Defendant: I tried that once.
>
> The Court: What?
>
> The Defendant: I tried that once.
>
> The Court: You tried that once? When was that?
>
> The Defendant: When I was small.
>
> The Court: What happened when you were small?
>
> The Defendant: I lost a finger because I tried.
>
> The Court: You lost a finger you say?
>
> The Defendant: Part of it.
>
> The Court: What happened then?

> The Defendant: That's when I did something when I had a fight with my sister. I wanted to show my mother I was sorry. Instead of showing her I was sorry, she cut me.
>
> The Court: Who tried to cut you your mother or your sister?
>
> The Defendant: My mother.
>
> The Court: We are going to have the doctors look at you, Mr. Suggs. They may be able to help you in some way because there is something wrong with you, apparently. You seem to be— whom are you mad at?
>
> The Defendant: No one. (Plea minutes, pp. 19–21).

 Even if the hearing before Judge Melia were viewed as a full blown State proceeding, the factual findings of which are entitled to a presumption of correction on a federal habeas corpus petition, *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973), petitioner would still have the right to a federal evidentiary hearing since the merits of the factual dispute were not fully resolved in the State court hearing. 28 U.S.C. § 2254(d)(1). When I requested the hearing to be held in State court, I named certain witnesses whose testimony appeared necessary; these suggestions were not exhaustive. Indeed, it is clear now that it was imperative to take the testimony of Justice Gold, who concluded that Suggs was incompetent after consulting the Lubin-Kedar report and holding a hearing, and who entered an order which caused Suggs to be transferred from Bellevue to Matteawan to be hospitalized. His testimony was not taken. This glaring omission renders the State court record incomplete for the issue presented by the later appearing Messinger Report could not have been adequately resolved without some indication of Justice Gold's knowledge or lack of knowledge of the existence of the report at the time of his findings.

In determining that a hearing on the competency issue must be held, I am not unmindful of the dim view taken by the Supreme Court of *nunc pro tunc* determina-

tions of competency in situations where ambiguities exist regarding the legal significance of psychiatric evidence in the absence of a contemporaneous competency determination. *See, e. g., Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 386, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Dandridge v. United States*, 356 U.S. 259, 78 S.Ct. 714, 2 L.Ed.2d 757 (1958). However, because the Court of Appeals has called upon me to cause this issue to be retroactively litigated, I am bound by that Court's determination of the procedural posture that this case must assume.

Both petitioner's motion for summary judgment and respondent's motion to dismiss are denied. The matter will be set down for an evidentiary hearing.

SO ORDERED.

